## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NO.  26-02514-MJ-D'Angelo

UNITED STATES OF AMERICA

v.

**DANIEL ALEJANDRO HERNANDEZ,**
a/k/a "Mickey," and
**ALEXANDER WALKER CARRABALLO,**

       Defendants.

_____/

FILED BY_____OG_____D.C.

**Mar 16, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

                    Respectfully submitted,

                    JASON A. REDING QUIÑONES
                    UNITED STATES ATTORNEY

By:     /s/ Almas Abdulla
        ALMAS ABDULLA
        Assistant United States Attorney
        Court No. A5503257
        U.S. Attorney's Office - SDFL
        99 Northeast 4th Street, #633
        Miami, Florida 33132
        Telephone: (305) 961-9008
        Email: Almas.Abdulla@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

United States of America
)
v.
)
DANIEL ALEJANDRO HERNANDEZ,
)     Case No.   26-02514-MJ-D'Angelo
a/k/a "Mickey," and
)
ALEXANDER WALKER CARRABALLO,
)
)
_____
*Defendants.*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____**March 13, 2026**_____ in the county of _____**Miami-Dade**_____ in the
_____**Southern**_____ District of _____**Florida**_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 21 USC 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Garrett Redfern, Special Agent DEA  504705
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  Face Time

Date:  3/16/26
_____
*Judge's signature*

City and state:  _____**Miami, Florida**_____     Honorable Ellen F. D'Angelo, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Garrett B. Redfern, being duly sworn, hereby depose and state as follows:

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since December 2021. As such, I am an investigative or law enforcement agent within the meaning of Title 18, United States Code, Sections 2510(7) and 545. I am currently assigned to the Miami Field Division, High Intensity Drug Trafficking Area ("HIDTA") Enforcement Group 41. Prior to my employment as a Special Agent in DEA, I was assigned as a Police Detective for the Northeastern University Police Department in Boston, Massachusetts for approximately five years. Prior to my position as a Detective, I worked as a patrol officer for approximately five years. I graduated from the DEA Basic Agent Academy in 2022, the Lowell Municipal Police Academy in Massachusetts in 2011, and hold an Associate's degree in Criminal Justice from Middlesex Community College.

2.      During my time as a Special Agent and Police Detective, I have participated in numerous investigations involving violations of state and federal controlled substances laws, including Title 21, United States Code, Sections 841(a)(1) and 846. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug law and/or other criminal offenses; the seizure of drugs, money, and vehicles; and the forfeiture of personal property. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the affecting of arrests, and debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. As a result of my experience and training, I am familiar with how various types of drugs are cultivated,

1

manufactured, smuggled, distributed, and diverted, as well as the methods used by narcotics traffickers to finance drug transactions and launder drug proceeds.

3.      This affidavit is submitted in support of a criminal complaint charging **Daniel Alejandro HERNANDEZ** ("**HERNANDEZ**"), and **Alexander WALKER CARRABALLO** ("**WALKER**") with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. Section 841(a)(1), and conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846 (the "**TARGET OFFENSES**").

4.      I submit this Affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. I have not included each fact and circumstance of the case in this affidavit; rather, I have included only the facts and circumstances that I believe are sufficient to establish probable cause.

## PROBABLE CAUSE

1.      In or about May 2025, DEA personnel received information from a confidential source (hereinafter, "CS") that an individual named "Mickey" was distributing kilogram-quantities of cocaine from his residence at 139 NW 58th Street, Miami, Florida. Law enforcement identified **HERNANDEZ** as "Mickey." This CS has provided information to law enforcement many times in the past, and that information has been independently corroborated and proven to be fruitful in criminal prosecutions

2.      A check of **HERNANDEZ's** criminal history showed the following charges in the state of Florida: two 2010 convictions for possession/sale of cocaine with intent to distribute, and a 2010 conviction for selling cocaine near a school. A subpoena sent to the Florida Department of Revenue revealed no employment and no wage or income records for **HERNANDEZ** since

2

January 2023. Since December 2025, law enforcement has observed **HERNANDEZ** on a near-daily basis, and **HERNANDEZ** has never been observed going to or from a place of employment or job.

### *Initial Investigation and Suspected Narcotics Activity at HERNANDEZ's Home*

3.     At the onset of this investigation, on or about December 12, 2025, DEA personnel established electronic surveillance on **HERNANDEZ's** home to begin monitoring for suspicious activity. Almost immediately, the video footage showed high volumes of traffic at **HERNANDEZ's** home: On a near-daily basis, **HERNANDEZ** was identified meeting with many different people in his driveway. Law enforcement saw people arriving at the home, appearing to enter the residence, and departing a short time later. Many times, individuals arrived either carrying seemingly empty bags or carrying nothing. These individuals then left **HERNANDEZ's** home soon afterwards carrying unidentified items or bags seeming to contain bulky items. Based on my training and experience, I recognize this activity to be consistent with narcotics trafficking and the exchange of both narcotics and bulk cash.

4.     The following is a representative sample of this activity. It does not include all of the observed suspected narcotics transactions occurring at **HERNANDEZ's** home and only includes information to establish probable cause.

### *Suspected Narcotics Activity On December 12, 2025*

5.     On or about December 12, 2025, at approximately 2:44 PM, a gray Nissan SUV bearing an unknown registration arrived at **HERNANDEZ's** home and parked in the driveway. A heavy-set Hispanic man wearing a black shirt and gray shorts exited the Nissan SUV carrying a medium-sized gray and black bag. This man was later identified as **UNINDICTED CO-CONSPIRATOR 3**. **UNINDICTED CO-CONSPIRATOR 3** entered **HERNANDEZ'S** home

3

carrying a gray and black bag in his left hand. He had a watch on his left wrist, white sneakers, and medium-length white socks. At approximately 3:34 PM, **UNINDICTED CO-CONSPIRATOR 3** exited **HERNANDEZ'S** residence carrying the same gray and black bag. **UNINDICTED CO-CONSPIRATOR 3** entered the gray Nissan SUV and departed the area. Based on my training and experience, I am aware that kilogram- and pound-level narcotics distributors will often utilize bags such as these to transport bulk narcotics and bulk cash into and out of locations where they conduct their transactions with both customers and sources of supply. I recognize this behavior as consistent with such activity.

### *Suspected Narcotics Activity On December 18, 2025*

6.      On or about December 18, 2025, at approximately 7:41 PM, a black Mercedes sedan bearing a partial Florida registration BY**** arrived at **HERNANDEZ'S** home and pulled in the driveway. At this time, **HERNANDEZ** did not appear to be home, as his Porsche was not in the driveway. The sedan waited in the roadway until approximately 7:42 PM, at which time **HERNANDEZ** returned to **HERNANDEZ'S** home in his gray Porsche. **HERNANDEZ** approached the driver's side window of the Mercedes and spoke with the driver. The Mercedes left around 10 minutes later, at approximately 7:54 PM.

7.      At approximately 10:24 PM, the black Mercedes returned to **HERNANDEZ'S** home and parked horizontally behind **HERNANDEZ's** gray Porsche. **HERNANDEZ** came out of his residence and appeared to be using a cell phone. **HERNANDEZ** spoke with the occupant(s) of the black Mercedes through the passenger's side window. **HERNANDEZ** looked around several times and appeared as if he was waiting for someone. The black Mercedes stayed in the driveway and **HERNANDEZ** remained at the passenger side window.

4

8.    Minutes later, at approximately 10:57 PM, a dark gray Honda sedan drove past **HERNANDEZ'S** home, and the black Mercedes parked in front of the driveway. Via electronic surveillance, red lights consistent with vehicle brake lights could be seen to the east of **HERNANDEZ'S** home, which investigators believed to be consistent with the gray Honda sedan parking there. A man wearing a white T-shirt, jeans, a gold watch on the left wrist, a hat, and appearing to be bald, was observed via electronic surveillance walking from the east to **HERNANDEZ'S** home carrying what looked like a black laptop bag. As discussed herein, this man was later identified in this investigation as **Miguel ALONSO**[1] (hereinafter, "**ALONSO**"). **ALONSO** passed the front of the black Mercedes and waved to the occupant(s) inside the Mercedes. At the same time, **HERNANDEZ** opened the passenger door of the Mercedes, retrieved a medium-sized black bag, and slung it over his shoulder. The bag appeared full and heavy.

9.    **HERNANDEZ** and **ALONSO** walked into **HERNANDEZ'S** home, each carrying a black bag. At approximately 11:02 PM, **HERNANDEZ** and **ALONSO** left **HERNANDEZ'S** home. Via electronic surveillance, investigators could see that **HERNANDEZ** was carrying a heavy black bag slung over his left shoulder. **ALONSO** was also carrying a black bag in his left hand and had an additional black satchel strapped over his shoulder. **HERNANDEZ** entered the front passenger seat of the black Mercedes sedan with the black bag in hand. **ALONSO**, carrying both bags, walked east down 58th Street and out of view of electronic surveillance. Almost immediately thereafter, investigators observed red lights consistent with brake lights via the electronic surveillance. Shortly after that, the gray Honda sedan (in which **ALONSO** appeared to have arrived) traveled west past **HERNANDEZ'S** home. At approximately

---

[1] **ALONSO**, as discussed herein, was determined to have a significant criminal history related to cocaine trafficking.

5

11:10 PM, **HERNANDEZ** stepped out of the black Mercedes sedan. **HERNANDEZ** no longer had the black bag with which he had entered the Mercedes. **HERNANDEZ** reentered his residence, and the Mercedes sedan left the area.

10.     Based on my training and experience, I know that kilogram- and pound-level narcotics distributors will often utilize bags like these to transport bulk narcotics and bulk cash into and out of locations and vehicles where they conduct their transactions with both customers and sources of supply. I also recognize brief meetings such as this to be consistent with narcotics transactions.

*Suspected Narcotics Activity On December 22, 2025*

11.     Via electronic surveillance, law enforcement determined that, on December 22, 2025, at approximately 9:24 PM, a gray Nissan SUV bearing Florida registration "FLUG56" arrived at **HERNANDEZ'S** home. **UNINDICTED CO-CONSPIRATOR 3** exited the Nissan SUV. **UNINDICTED CO-CONSPIRATOR 3** walked up the driveway into **HERNANDEZ'S** home, carrying the blue shopping bag. The shopping bag appeared about half-full with its contents at the bottom. At approximately 9:27 PM, **UNINDICTED CO-CONSPIRATOR 3** was seen exiting **HERNANDEZ'S** home without the blue bag that he brought in. **UNINDICTED CO-CONSPIRATOR 3** then entered the Nissan SUV and left the area.

12.     Based on my training and experience, I understand that kilogram- and pound-level narcotics distributors will often utilize bags such as these to transport bulk narcotics and bulk cash into and out of locations and vehicles where they conduct their transactions with both customers and sources of supply. I also understand that narcotics traffickers will often provide drugs on consignment or make payments for drugs that were previously received. I recognize

6

**UNINDICTED CO-CONSPIRATOR 3**'s apparent drop-off of the royal blue bag into **HERNANDEZ'S** home to be consistent with such activity.

13.     The same day, at approximately 10:28 PM, law enforcement observed **ALONSO** walking across 58th Street from the south side via electronic surveillance. He was wearing dark-blue shorts, a dark-blue shirt, a gold watch on his left wrist, and carrying what appeared to be a black laptop bag in his left hand. **ALONSO** walked up the driveway and into **HERNANDEZ'S** home. Minutes later, at approximately 10:32 PM, **ALONSO** walked out of the residence and down the driveway. He appeared to be carrying the same black laptop bag, which appeared thicker and heavier than it did when he entered **HERNANDEZ'S** home. **ALONSO** walked across to the south side of 58th Street. Moments later, red lights consistent with brake lights could be seen in the reflection of the back bumper of **HERNANDEZ's** Porsche, which was parked in the driveway of his home. Shortly thereafter, a gray Honda Accord was seen exiting the area, traveling west on 58th Street.

14.     Based on my training and experience, I believe the apparent addition of weight to the bag **ALONSO** was carrying as he exited the residence to be consistent with his retrieving something from **HERNANDEZ** inside the home. As referenced above, I believe this behavior is consistent with traffickers transporting bulk narcotics and/or cash.

### *Suspected Narcotics Activity On January 3, 2026*

15.     Via electronic surveillance, law enforcement observed that on or about January 3, 2026, at approximately 4:42 PM, a silver Honda CRV arrived at **HERNANDEZ'S** home and parked in the driveway. **HERNANDEZ** stepped out of the home carrying a brown backpack and entered the passenger side of the silver Honda with the bag. The driver of the silver Honda SUV appeared to be a Hispanic male with a high skin fade or crewcut hairstyle. He was later identified

in this investigation as **WALKER**. Once inside the Honda, via electronic surveillance, **HERNANDEZ** could be seen placing the brown backpack on his lap. **HERNANDEZ** opened the brown backpack and removed a white plastic shopping bag from it, an exchange was made between **WALKER** and **HERNANDEZ** with what appeared to be cash. Moments after that, **HERNANDEZ** exited the silver Honda CRV with the brown backpack and reentered e silver Honda CRV then left the his residence, the Honda CRV and **WALKER** departed the area. Based on my training and experience, and as referenced above, I believe this activity is consistent with a narcotics transaction. Furthermore, it should be noted that investigators determined this interaction was different than others described herein, specifically in that **HERNANDEZ** did not routinely enter the vehicles of his visitors. Based on my training and experience I recognize this to be more consistent with **HERNANDEZ** meeting with a source of supply ("SOS"), and therefore law enforcement began to suspect that **WALKER** was a SOS for **HERNANDEZ**.

### *Suspected Narcotics Activity On January 4, 2026*

16. The next day, on about January 4, 2026, at approximately 6:40 PM, law enforcement observed via electronic surveillance a white SUV bearing a partial unknown state registration "**Z-7890" arrive at **HERNANDEZ'S** home and park in the driveway. A Hispanic man with braided hair wearing a black sweatshirt stepped out of the driver's seat of the car and walked up the driveway of the home. Law enforcement identified this man from a separate investigation as **Unindicted Co-Conspirator 1**. **HERNANDEZ** exited his residence and greeted **Unindicted Co-Conspirator 1**. **HERNANDEZ** walked to the front driver's door of his silver Mercedes SUV parked in the driveway and appeared to retrieve a white item about the size of a softball from the silver Mercedes, then walked toward **Unindicted Co-Conspirator 1** out of view of the surveillance. At approximately 6:44 PM, **Unindicted Co-Conspirator 1** walked back to the

8

white SUV. Law enforcement could see a bulge consistent in size with the white item **HERNANDEZ** had been holding in the front pocket of **Unindicted Co-Conspirator 1's** sweatshirt. **Unindicted Co-Conspirator 1** reentered the white SUV and left the area. Based on my training and experience, and as referenced above, I recognize this behavior to be consistent with a narcotics transaction. Furthermore, I believe **HERNANDEZ** provided **Unindicted Co-Conspirator 1** with narcotics.

*Law Enforcement Activity On January 7, 2026*

17.     On or about January 7, 2026, at approximately 10:28 pm, a gray Honda Accord bearing Florida registration "QEAM10" arrived at **HERNANDEZ'S** home. This vehicle was consistent in appearance with the one driven by **ALONSO** referenced above. It parked on the south side of 58th Street, to the east of the home. **ALONSO**, bald with a goatee and wearing a white t-shirt, black shorts, navy-blue or black shoes with a white sole, exited the Honda carrying a black satchel bag and walked up the driveway and into **HERNANDEZ'S** home.

18.     About 15 minutes later, at approximately 10:54 PM, **ALONSO** left **HERNANDEZ'S** home carrying his original black bag and a white plastic shopping bag. The shopping bag appeared to be full and heavy. Investigators observed items inside the white shopping bag, which appeared to be wrapped in green cellophane wrap. These items were also consistent in size with kilogram quantities of narcotics. **ALONSO** entered the gray Honda Accord and departed the area, followed by law enforcement surveillance. At approximately 11:00 PM, marked patrol units from MPD conducted a vehicle stop of Alonso's Honda at the intersection of NW 62nd Street and NW 5th Ct. As uniformed officers exited their cruisers and approached **ALONSO** in his car, **ALONSO** fled the traffic stop at a high rate of speed. **ALONSO** merged onto I-95 southbound at an extremely high rate of speed and escaped.

9

19. Law enforcement soon determined that an anonymous tip had been provided to the Miami-Dade County Sheriff's Office ("MDSO") Narcotics Unit in December 2022 with information about **ALONSO**. The anonymous tip alleged that **ALONSO** had been a drug dealer in Miami for many years. It stated **ALONSO's** date of birth was September 9th, 1977, his Social Security Number was 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, and he drove a Silver Honda bearing Florida tag "QEAM10." This information, as well as **ALONSO's** Florida driver's license photo, corroborated the suspicions of DEA investigators. Based on my training and experience, as well as this anonymous tip, I believe **ALONSO** fled the vehicle stop directly after obtaining a bulk quantity of narcotics from **HERNANDEZ**.

### *Controlled Purchase: HERNANDEZ Sources One Half-Kilogram of Cocaine to UNINDICTED CO-CONSPIRATOR 1*

20. On or about February 10, 2026, law enforcement conducted a controlled purchase of one-half kilogram of cocaine from **UNINDICTED CO-CONSPIRATOR 1** using a confidential source ("CS"). Before completing the transaction, law enforcement observed **UNINDICTED CO-CONSPIRATOR 1** travel directly to **HERNANDEZ'S** home, retrieve the one-half kilogram of cocaine, and meet directly with the CS to exchange the cocaine for $8,500 in official funds. The details are as follows:

21. On or about the above-mentioned date, before the controlled purchase, the CS and the CS's car were searched by law enforcement, finding no money or contraband. Law enforcement then issued $8,500 in official funds to the CS. At approximately 4:05 PM, the CS placed a controlled call to **UNINDICTED CO-CONSPIRATOR 1** to organize the transaction. During the call, **UNINDICTED CO-CONSPIRATOR 1** told the CS that at 5:00 PM, **UNINDICTED CO-CONSPIRATOR 1** was going to go pick up the narcotics from his source and then make his way to the CS at the agreed-upon meet location, where he would arrive by 6:00

PM. **UNINDICTED CO-CONSPIRATOR 1** stated that he would be driving his girlfriend's car because his car (a black Chevrolet Silverado pickup truck) had a damaged headlight.

22. Law enforcement established surveillance at **HERNANDEZ'S** home as well as the meet location with the CS. At approximately 5:27 PM, a black Ford Fusion bearing Florida registration PXAS77 arrived at **HERNANDEZ'S** home. It parked in front of the driveway of **HERNANDEZ'S** home, facing east on 58th Street. At approximately 5:31 PM, the Ford moved to the west side of the home and parked along the side of the road. At approximately 5:35 PM, a man—whom investigators recognized as **UNINDICTED CO-CONSPIRATOR 1**—dressed in all black and carrying a black shoulder bag, stepped out of the car. **UNINDICTED CO-CONSPIRATOR 1** walked east on 58th Street to the driveway of **HERNANDEZ'S** home and into the home. Approximately two minutes later, at 5:37 PM, **UNINDICTED CO-CONSPIRATOR 1** left the residence and walked west on 58th Street toward the black Ford. The black shoulder bag **UNINDICTED CO-CONSPIRATOR 1** had been wearing appeared empty and light, and the zipper for the bag was open with no contents observed inside.

23. **UNINDICTED CO-CONSPIRATOR 1** remained in the vehicle until approximately 5:45 PM, at which time he exited the vehicle, walked east on 58th Street, and walked toward **HERNANDEZ'S** home. Moments later, at approximately 5:46 PM, **HERNANDEZ** exited the residence and met **UNINDICTED CO-CONSPIRATOR 1** next to a white or gray tarp that was positioned in front of the door. The white tarp appeared to serve as a temporary entrance or a storage area for the residence. **UNINDICTED CO-CONSPIRATOR 1** then exited this area and began walking away from **HERNANDEZ'S** home, at which time **HERNANDEZ** entered the home. **UNINDICTED CO-CONSPIRATOR 1** walked down the driveway, and his black shoulder bag appeared full, heavy, and the zipper was shut and closed.

UNINDICTED CO-CONSPIRATOR 1 walked to the black Ford Fusion and entered the driver's seat. Immediately thereafter, the Ford Fusion reversed and departed the area, traveling east on 58th Street.

24.     Investigators maintained surveillance on UNINDICTED CO-CONSPIRATOR 1 and the black Ford Fusion. UNINDICTED CO-CONSPIRATOR 1 drove straight to the meet location, making no stops along the way. At approximately 6:03 PM, UNINDICTED CO-CONSPIRATOR 1 arrived at the meet location and met with the CS. The CS entered the Ford Fusion's front passenger seat next to UNINDICTED CO-CONSPIRATOR 1, who was driving the car. After brief small talk, the CS exchanged the $8,500 in official funds with UNINDICTED CO-CONSPIRATOR 1 for the half-kilogram of cocaine. UNINDICTED CO-CONSPIRATOR 1 and the CS had normal conversation until approximately 6:09 PM. This interaction was audio- and video-recorded. At approximately 6:09 PM, the CS and UNINDICTED CO-CONSPIRATOR 1 separated, and UNINDICTED CO-CONSPIRATOR 1 drove away. Law enforcement met with the CS at a neutral location and recovered the suspected cocaine. The suspected cocaine was sealed inside a vacuum-sealed clear plastic bag. Law enforcement searched the CS again, finding no contraband or cash. Law enforcement completed a field test of the suspected narcotics purchased from UNINDICTED CO-CONSPIRATOR 1, which tested positive for cocaine. Based on my training and experience, I understand that this incident provides strong evidence that HERNANDEZ supplied UNINDICTED CO-CONSPIRATOR 1 with the half-kilogram of cocaine.

*Continued Suspected Narcotics Activity between HERNANDEZ and UNINDICTED*

*CO-CONSPIRATOR 1*

12

25.     Following this incident and via electronic surveillance, law enforcement continued to observe a high volume of suspected narcotics activity between **HERNANDEZ** and **UNINDICTED CO-CONSPIRATOR 1**. These interactions were very similar in nature to those referenced above. Specifically, the following is a representative sample of dates of the suspected transactions between **HERNANDEZ** and **UNINDICTED CO-CONSPIRATOR 1** (which does not include all of the suspected narcotics activity observed between **HERNANDEZ** and **UNINDICTED CO-CONSPIRATOR 1**) is as follows:

    a.  On or about January 4, 2026, January 16, 2026, January 20, 2026, January 30, 2026, January 31, 2026, February 6, 2026, February 7, 2026, February 9, 2026, February 11, 2026, February 12, 2026, February 13, 2026, February 16, 2026, February 17, 2026, February 18, 2026, February 20, 2026, February 23, 2026, February 25, 2026, February 27, 2026, March 2, 2026, March 4, 2026 and March 10, 2026.

26.     This activity occurred as recently as March 10, 2026. On or about that day, at approximately 9:09 PM, **UNINDICTED CO-CONSPIRATOR 1** arrived at **HERNANDEZ'S** home in a black Chevy Silverado pickup truck and parked in the driveway. **UNINDICTED CO-CONSPIRATOR 1** exited the truck carrying a black satchel bag slung over his left shoulder. The bag appeared to be unzipped, open, empty, and light. **UNINDICTED CO-CONSPIRATOR 1** entered the home and left about 30 seconds later. His black bag appeared heavy and full. **UNINDICTED CO-CONSPIRATOR 1** reentered the black pickup truck and immediately left the area. Based on my training and experience, as well as my knowledge of this investigation, I understand this incident to be consistent with another bulk narcotics transaction during which **HERNANDEZ** supplied **UNINDICTED CO-CONSPIRATOR 1** with narcotics.

13

### *Narcotics activity between HERNANDEZ and WALKER and identification of stash location at 4Midtown Blvd Miami, FL.*

27. As referenced above, law enforcement initially identified the interaction between **HERNANDEZ** and **WALKER** on January 3, 2026 to be consistent with **WALKER's** role as a SOS of cocaine. Similar interactions were observed by investigators on other dates, specifically January 28, 2026, January 31, 2026, February 9, 2026, February 13, 2026, February 15, 2026, February 16, 2026, February 20, 2026, February 22, 2026, February 24, 2026, February 25, 2026, February 27, 2026, and March 10, 2026, as mentioned above. This suspicion led investigators to utilize various resources in an effort to locate **WALKER** and the Honda CRV he was known to operate.[2]

28. These efforts led investigators to locate **WALKER's** CRV parked in the vicinity of the high-rise apartment building at 4 Midtown Blvd, Miami, FL on more than one occasion. Law enforcement coordinated with building management and subsequently obtained video footage of **WALKER** and another individual, identified as **UNINDICTED CO-CONSPIRATOR 2** entering and exiting **Apartment #2709 (APT 2709)** on numerous occasions. Additionally, law enforcement learned that **UNINDICTED CO-CONSPIRATOR 2** and **WALKER** were suspected of sub-leasing the apartment and were not listed as tenants.

29. On more than one occasion, footage obtained by law enforcement showed **UNINDICTED CO-CONSPIRATOR 2** and **WALKER** bringing large duffle bags, containers and or boxes into and out of **APT 2709**. It also became apparent that neither **UNINDICTED CO-CONSPIRATOR 2** nor **WALKER** lived at **APT 2709**. Based on my training and experience, I am aware that sources of narcotics supply will often keep apartments or houses as stash locations

---

[2] This vehicle was identified as a silver Honda CRV bearing FL registration AK02YX

14

where they store the majority of their narcotics supply. Furthermore, I understand that stash locations are not typically places of full-time residence for those individuals who are responsible for keeping the narcotics supply secure. Because of this, as well as the facts of this investigation which include **WALKER's** interactions with **HERNANDEZ** at **HERNANDEZ'S** home, which were recognized as consistent with **WALKER** being a narcotics SOS, law enforcement believed that **APT 2709** was functioning as a stash location.

### Walker Is Arrested Leaving APT 2709 With A Bulk Quantity Of Cocaine

30.     On March 13, 2026, law enforcement established surveillance in the vicinity of **APT 2709**. At approximately 4:30 PM, investigators observed **WALKER** arrive at **APT 2709** in his Honda CRV. He entered the door of **APT 2709** empty-handed.

31.     Minutes later, **WALKER** exited **APT 2709,** now carrying what looked like a satchel or a shopping bag in his left hand, strapped around his left shoulder. The satchel appeared full, and was bulging and rounded.

32.     **WALKER** departed **APT 2709** and drove his Honda CRV out of the apartment building's parking garage. Law enforcement conducted a vehicle stop of the CRV directly outside of the parking garage and detained **WALKER** for further investigation.

33.     A police narcotics K9 conducted a free-air sniff of the Honda CRV and alerted to the presence of narcotics around the exterior of the vehicle. Investigators initiated a vehicle search and located evidence of a hidden compartment in the vehicle's center console. The compartment was opened, and law enforcement discovered a bulk quantity of cash and suspected cocaine which appeared to be packaged for sale. Investigators continued searching and identified two other hidden compartments underneath the driver's seat and front passenger's seat of the vehicle. In the compartment under the driver's seat, investigators found three brick-shaped packages consistent

15

with kilogram packaging of narcotics. The suspected narcotics were field tested, which showed a positive result for the presence of cocaine.

34.     Based on this event, as well as the other facts of this investigation, I believe there is strong evidence to support the suspicion that **WALKER** has been functioning as a SOS for **HERNANDEZ** and others yet unknown. Furthermore, I believe strong evidence exists to suggest that **WALKER, UNINDICTED CO-CONSPIRATOR 2**, and others yet unknown have been utilizing **APT 2709** as a stash location for a much larger supply of cocaine. Lastly, this event further corroborates the narcotics trafficking activity observed at **HERNANDEZ'S** home between **HERNANDEZ, WALKER, UNINDICTED CO-CONSPIRATOR 2, and UNINDICTED CO-CONSPIRATOR 1** .

### *Search Warrant Executed At APT 2709 Results in the Seizure of Approximately 540 Kilograms of Cocaine*

35.     As a result of the above, on or about March 13, 2026, a federal search warrant was authorized for **APT 2709** by the Magistrate Judge Enjolique A. Lett, *In re Sealed Search Warrant*, 1:26-mj-2485-LETT.

36.     On the same day, at approximately 11:47 PM, law enforcement executed the search warrant at **APT 2709**. The following is a summary of evidence seized from **APT 2709**:

    a.  A total of approximately 540 Kilograms of suspected cocaine was located in two separate bedrooms. Hidden in a false compartment under a bed in the master bedroom, law enforcement located several hundred kilograms of suspected cocaine.

    b.  Located in plain view, in a closet of a second room, law enforcement located several hundred kilograms of cocaine.

16

    c.  Law enforcement located a total of approximately $3 Million dollars in United States Currency. In the master bedroom, law enforcement located a large amount of bulk U.S. currency in the false bottoms of approximately three separate dressers.

    d.  Law enforcement also discovered a large amount of bulk U.S. currency in a black container with a yellow lid located in the second room, as well as in pain view on the kitchen counter.

    e.  Law enforcement identified boxes and empty large duffle bags and containers consistent with what law enforcement observed on video camera **WALKER** and **UNINDICTED CO-CONSPIRATOR 2** enter **APT 2709**.

37.    During the search of **APT 2709**, law enforcement also located several receipts on the kitchen counter which depicted the name of **UNINDICTED CO-CONSPIRATOR 2**. Directly behind where these receipts were located, also on the kitchen counter in plain view, was several large stacks of U.S. currency, banded with elastic bands consistent with the proceeds of narcotics transactions. The pictures below represent some of the evidence seized during the search:



17







**Arrest And Interview of HERNANDEZ**

38.     On March 13, 2026, at approximately 6:25 PM, surveillance was established in the area of **HERNANDEZ'S** home. At approximately 6:31 PM, **HERNANDEZ** departed his residence operating a white Mercedes SUV. Law enforcement then conducted a traffic stop of **HERNANDEZ** on 62nd Street, Miami, Florida, near the Interstate-95 underpass. **HERNANDEZ** was placed under arrest and transported back to his residence, pending the authorization of a search warrant.

39.     At approximately 7:28 PM, **HERNANDEZ** was read his *Miranda* warnings. **HERNANDEZ** stated he understood his rights and agreed to speak to law enforcement. He also signed a DEA *Miranda* warning form indicating he would speak with law enforcement and signed a consent to search form granting consent for law enforcement to search his residence.

40.     **HERNANDEZ** was interviewed by law enforcement. **HERNANDEZ** stated the following: **HERNANDEZ** stated he has no job or employment. **HERNANDEZ** advised law

19

enforcement he makes money by selling narcotics and gambling. **HERNANDEZ** relayed that he had a few ounces of cocaine, a kilogram press, and over a hundred empty kilogram wrappers currently in his residence. **HERNANDEZ** stated that he cuts his cocaine with caffeine and re-presses the kilogram quantity of cocaine in a kilogram press machine.

41. **HERNANDEZ** stated that most recently, he has two sources of supply for cocaine. **HERNANDEZ** stated he receives kilogram quantity of cocaine from an individual he knows as "Kiki", on a weekly to bi-weekly basis for the last two to three years. **HERNANDEZ** positively identified a photograph of **UNINDICTED CO-CONSPIRATOR 3** as "Kiki". **HERNANDEZ** also advised that **UNINDICTED CO-CONSPIRATOR 3** was last seen driving a grey Nissan SUV and always went to **HERNANDEZ**'S home to supply **HERNANDEZ** with cocaine.

42. **HERNANDEZ** stated that for the last two to three years, he received one to two kilograms of cocaine on a weekly basis, from an individual **HERNANDEZ** identified as "**Al Biggs.**" **HERNANDEZ** positively identified a photograph of **WALKER** as "**Al Biggs.**" **HERNANDEZ** further mentioned that **WALKER** drives a HONDA CRV.

43. **HERNANDEZ** told law enforcement he last purchased a kilogram of cocaine from **WALKER** on March 10, 2026, for $14,000 and paid cash. **HERNANDEZ** further stated **UNINDICTED CO-CONSPIRATOR 2** was present in the front passenger seat during this transaction.

44. **HERNANDEZ** also positively identified a photograph of **UNINDICTED CO-CONSPIRATOR 1**, whom **HERNANDEZ** knows by "Pri." **HERNANDEZ** stated that he has sold cocaine to **UNINDICTED CO-CONSPIRATOR 1** on several occasions.

20

### Search Of HERNANDEZ'S Residence

45.     At approximately 8:45 PM, **HERNANDEZ** granted consent of his residence, located at 139 NW 58th St Miami, FL, by signing a DEA consent to search form. On the same date, a search warrant was authorized for **HERNANDEZ'S RESIDENCE** by Magistrate Judge Enjolique A. Lett, *In Re Sealed Search Warrant*, 1:26-mj-2484-LETT.

46.     The following evidence was seized from **HERNANDEZ'S RESIDENCE**: More than one ounce of suspected cocaine, a kilogram press machine, approximately 100 empty kilogram packaging wrappers containing residue of suspected cocaine, and scales and plastic baggies consistent with narcotics trafficking. All of the above-mentioned items were located in what **HERNANDEZ** described to law enforcement as his "work room."

### CONCLUSION

47.     Based on the foregoing facts, I respectfully submit there is probable cause to believe that in the Southern District of Florida, **HERNANDEZ** and **WALKER** did knowingly and intentionally commit the **TARGET OFFENSES**.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
GARRETT REDFERN
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time, DEA: 504705 this 16th day of March, 2026.

_____
HONORABLE ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

21